IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ROBERT MANN, Ph.D.,

    Plaintiff,

v.                            CASE NO. 1:96cv79-MMP

BOARD OF REGENTS, et al.,

    Defendants.

_____/

## O R D E R

This cause is before the court on Defendants' Motion to
Dismiss Plaintiff's Amended Complaint (doc. 20). Plaintiff,
after having been ordered to do so by this Court (see doc. 23),
filed a memorandum in opposition thereto (doc. 24). For the
reasons explained below, Defendants' motion is GRANTED.


I.    **BACKGROUND**

Between August 1987 and August 1993, Dr. Robert Mann
("Plaintiff") worked at the University of Florida ("UF") as an
assistant professor of Russian Language and Literature.
Specifically, Plaintiff worked in the Department of Germanic and
Slavic Languages and Literatures ("the Department") which, at all
relevant times, was chaired by Dr. Alexander Stephan ("Stephan").

ENTERED ON DOCKET 4/28/97 BY *d.s.*
[Rules 58 & 79(a) FRCP or 32(d)(1) & 55 FRCRP]
Copies mailed to: Bernstein, Chiles,
Stewart, Wingo, COB

- 33 -

According to the amended complaint, Stephan "viewed the Plaintiff as an ideological foe" within the Department. *Amended Complaint* (doc.19) at ¶10.  Though the amended complaint does not explain in detail the source of this alleged ideological conflict, it does state that the conflict was manifested in Stephan's "repeated efforts to force Plaintiff to lower his academic standards in order to bolster departmental enrollments." *id*.  These efforts allegedly took place after "Plaintiff urged the Department to establish minimal requirements for academic achievement in Russian classes." *Id*. at ¶11.

In the fall of 1992, Plaintiff submitted an application for tenure.  Based on the aforementioned conflict, Plaintiff alleges that Stephan "attempted to subvert the Plaintiff's chances of getting tenure," *id*., and "sabotaged the Plaintiff's case for tenure." *Id*. at ¶12.  Stephan allegedly did so in the following ways:

> (1) he "repeatedly criticized the strenuous academic requirements of the Plaintiff in the Plaintiff's Russian Language classes," *id*. at ¶13;
>
> (2) he "initiated a highly irregular review process, never before used in the department, a procedure which even included the use of anonymous phone calls and other anonymous testimony tantamount to hearsay," *id*. at ¶11; and
>
> (3) he removed Plaintiff's Russian Study Program from the "'service' category of [Plaintiff's] personnel file and then criticiz[ed] him for not having a sufficient number of service activities," *id*. at ¶12.

Thereafter, all tenured faculty of the Department convened to vote on Plaintiff's application for tenure.  The faculty members voted to promote Plaintiff to the position of associate

2

professor; they voted to deny his tenure application, however.

After the meeting of Department faculty, Stephan wrote a letter regarding Plaintiff to the Dean of the College of Arts and Sciences at UF ("the dean").  In that letter, Stephan indicated his support for the denial of tenure but recommended that Plaintiff not be promoted.  Stephan also informed the dean that much of the faculty meeting was devoted to discussion of certain in-class comments made by Plaintiff which students had described as "intertwined with constant obscenities and sexual innuendos," *Id.* at ¶15 -- comments which the faculty discussed in the context of classroom sexual harassment.

Plaintiff alleges that Stephan's above-noted references to classroom "sexual innuendos" and sexual harassment arose from Plaintiff's activities as professor of Intensive Beginning Russian during the fall semester of 1992.  *Id.* at ¶34.   While teaching that class, "Plaintiff speculated that the gender endings [of Russian nouns] at one stage in their development might have been subliminally associated with sexual anatomy." *Id.* at ¶35.[1]  Plaintiff made this observation for "a clear pedagogical purpose: to inject life and humor into abstract classroom concepts and to create vivid, living associations with Russian words to aid in memorization."  *Id.*  He also displayed photographs -- taken from tabloid newspapers -- of such personages as the "Fattest Boy in the World," "The World's

---

[1]   Not surprisingly, the amended complaint fails to quote, or even paraphrase, the specific words or expressions that Plaintiff used to convey this novel theory of language to his class.

3

Skinniest Woman," and "The Longest Tongue in the World." *Id.*
According to Plaintiff, though all of these comments and acts
"served a clear purpose in [Plaintiff's] teaching of the Russian
language," they were "cited by a few students . . . as offensive
speech or 'sexual innuendo'," *id.*, they were wrongfully construed
as falling within UF's sexual harassment policy, *id.* at 37, and
they motivated the university's decision to deny Plaintiff's
application for tenure. *Id.* at ¶39.

Plaintiff's amended complaint contains four counts.  In
Count I, Plaintiff alleges that the defendants' acts in
disciplining him on the basis of his classroom comments violated
his First Amendment right to free speech, which violation is
actionable pursuant to 42 U.S.C. § 1983.  In Count II, Plaintiff
alleges that the irregular review process utilized by the
Department and the university deprived him of tenure without due
process of law.  In Count III, Plaintiff alleges a due process
denial of his First Amendment rights and his liberty interest.[2]
Finally, in Count IV, Plaintiff asserts a § 1983 claim against
Defendant Stephan -- in his official capacity -- and seeks
reinstatement to his position on the faculty at UF as well as an
award of back-pay and other damages.

---

[2] Based on a close reading of the complaint, it is clear that
Counts I, II, and III are brought against Defendant BOR, and
against Defendant Stephan in his official capacity. In addition,
Counts I and III also appear to be brought against Defendant
Stephan in his individual capacity.

4

## II.  ANALYSIS

In the motion to dismiss (doc. 20), the defendants assert that Plaintiff's amended complaint must be dismissed in its entirety.  The Court agrees.

### A.  The Eleventh Amendment bars all claims brought against Defendant Board of Regents, and all damages claims brought against Defendant Stephan in his official capacity.

Though its literal language might indicate otherwise[3], the Eleventh Amendment to the United States Constitution bars federal courts from entertaining suits brought by a citizen of a state against her own state. Hans v. Louisiana, 134 U.S. 1 (1890).  If a complaint is barred on Eleventh Amendment grounds, a federal district court has no subject matter jurisdiction over that action.  In such a case, the lawsuit must be dismissed.

### 1.   Claims Against Defendant Board of Regents

The Eleventh Amendment to the Constitution of the United States prohibits a federal court from exercising jurisdiction over a lawsuit against a State, except where: (i) the State has itself consented to suit or waived its immunity, or (ii) Congress has overridden the state's immunity.  Cross v. State of Alabama, 49 F.3d 1490, 1502 (11th Cir. 1995).  Florida has not waived its

---

[3]   The Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State."

Eleventh Amendment immunity to 42 U.S.C. § 1983 lawsuits in
federal court.  See Sentinel Communications Co. v. Watts, 936
F.2d 1189, 1195 n.5 (11th Cir. 1991).  Neither has Congress
abrogated Eleventh Amendment immunity in § 1983 cases.  Cross, 49
F.3d at 1502; Carr v. City of Florence, Alabama, 916 F.2d 1521,
1525 (11th Cir. 1990).  Thus, the Eleventh Amendment bars § 1983
lawsuits against the State of Florida.

Here, the State of Florida is not a named defendant --
instead, the amended complaint names Florida's Board of Regents
("BOR") as a defendant.  Eleventh Amendment immunity, however,
extends not only to the States, but also to state agencies and
other arms of the state.  Pennhurst State School and Hospital v.
Halderman, 465 U.S. 89, 104 S.Ct. 900, 908 (1984); Schopler v.
Bliss, 903 F.2d 1373, 1378 (11th Cir. 1990).  The BOR constitutes
an agency of the State of Florida for Eleventh Amendment
purposes.  See FLA. STAT. ANN. § 240.205.  Hence, the Eleventh
Amendment bars this lawsuit insofar as it attempts to state a
claim against the BOR.  Defendant BOR is therefore DISMISSED WITH
PREJUDICE from each count of the amended complaint.

### 2.  Damages Claims Against Defendant Stephan in his Official Capacity

Apart from the BOR, the only other defendant named by
Plaintiff is Stephan.  Stephan, however, is sued both in his
official capacity as chairman of the Department, and in his
individual capacity. As will be shown, the Eleventh Amendment
analysis is different for the official capacity claims than it is

6

for the individual capacity claims.

When a complaint is brought against a state official, the Eleventh Amendment bars a suit against that official where "the state is the real, substantial party in interest." Ford Motor Co. v. Dept. of Treasury of Indiana, 323 U.S. 459, 464 (1945). The general rule is that a suit is deemed to be against the state if the judgment sought: (1) would be paid out of public funds, or (2) would interfere with public administration, or (3) would either restrain the state government from acting, or compel it to act in a specified way. Dugan v. Rank, 372 U.S. 609, 620 (1963).

Under the Eleventh Amendment, a state official sued for *damages* in his official capacity is immune from suit in federal court. Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099, 3107 (1985); Jackson v. Georgia Dept. of Transportation, 16 F.3d 1573, 1575 (11th Cir.), cert. denied, 513 U.S. 929 (1994). Hence, all *damages* claims asserted against Stephan in his official capacity must be DISMISSED WITH PREJUDICE.

**B.   To the extent that Plaintiff's claims for reinstatement and for retroactive payment of benefits are brought against Defendant Stephan, they too must be dismissed.**

At this point, all of Plaintiff's claims against Defendant BOR have been dismissed on Eleventh Amendment grounds; likewise, Plaintiff's damages claims against Defendant Stephan in his official capacity have been dismissed. Accordingly, the only claims asserted in the amended complaint which have not yet been dismissed are: (1) Plaintiff's request, in Count IV, that this

7

Court order the defendants to reinstate Plaintiff to the faculty of the Department; (2) Plaintiff's request, in the same count, for "full restoration of his benefits"; and (3) Plaintiff's individual-capacity damages claim against Defendant Stephan. The Court will first consider whether the request for reinstatement may be maintained against Defendant Stephan -- the only remaining defendant.

The Eleventh Amendment does not bar an official capacity claim against a state official where the claim seeks prospective injunctive relief. <u>Cross</u>, 49 F.3d at 1503; <u>see</u>, <u>also</u>, <u>Ex Parte Young</u>, 209 U.S. 123, 28 S.Ct. 441 (1908) (establishing that Eleventh Amendment does not bar suits for equitable relief against state officers in their official capacity). For that reason, a request for reinstatement is not barred by the Eleventh Amendment.

Although he acknowledges this principle of Eleventh Amendment law, Defendant Stephan argues that the reinstatement request must be denied insofar as Plaintiff seeks an order from this Court directing Stephan to reinstate Plaintiff. Simply put, Stephan's argument is based on the fact that he does not presently have -- nor has he ever possessed -- the authority to reinstate Plaintiff to a position on the UF faculty. At the times pertinent to this litigation, Stephan was the chairman of the Department. Department heads at Florida state universities do not have the authority to hire and/or fire professors; by statute, that power is vested in the university president, <u>see</u>

8

FLA. STAT. ANN. § 240.227(5), and carried out by his duly appointed agents.  Plaintiff's own complaint makes clear that the decision to terminate Plaintiff was ultimately made not by Stephan but rather by the Dean of the College of Liberal Arts and Sciences in conjunction with the university provost's office.  *Amended Complaint* at ¶¶ 24, 26.  There is thus no basis to conclude that Defendant Stephan would have the power to reinstate Plaintiff even if event that he were ordered to do so.  The request for reinstatement must therefore be DISMISSED.[4]

Additionally, the Court must DISMISS Plaintiff's request in Count IV for full restoration of benefits insofar as that claim has been asserted against Defendant Stephan in his official capacity.  As counsel for the defendant notes, here Plaintiff seeks "loss of back pay, pension benefits, accrual rights, and medical insurance coverage," from "Defendant Stephan as department chairperson."  *Amended Complaint* at page 14.  Each of these items -- if awarded by the Court -- would necessarily be paid out of the state treasury with Florida public funds.  Hence, this claim, too, is barred by the Eleventh Amendment; for the

---

[4]  In different circumstances, the Court would be inclined to allow Plaintiff an opportunity to amend his complaint so as to substitute a defendant who would have the authority to reinstate him if ordered to do so by this Court.  See Foman v. Davis, 371 U.S. 178 (1962) (explaining that Fed.R.Civ.P. 15(a) requires courts to allow liberal amendments of pleadings where justice so requires).  Here, however, such an amendment would be futile due to the substantive shortcomings of Plaintiff's case.  See discussion, *infra*.  And where a proposed amendment would be futile, a district court is justified in denying leave to amend the complaint.  Foman, 371 U.S. at 182; Hargett v. Valley Federal Savings Bank, 60 F.3d 754, 761 (11th Cir. 1995).

state of Florida, and not Stephan, is the real party in interest. <u>Dugan</u>, 372 U.S. at 620.

     **C.**    **The Eleventh Amendment does not preclude Plaintiff's damages claim against Stephan in his individual capacity.**

     The Eleventh Amendment does not preclude an lawsuit in federal court against a state official where that official is sued under § 1983 for damages in his individual capacity. <u>Wu v. Thomas</u>, 863 F.2d 1543, 1550 (11th Cir. 1989); <u>Cross</u>, 49 F.3d at 1503. As noted in footnote one, <i>supra</i>, Counts I and III each appear to contain individual-capacity claims against Stephan. Those claims survive the Court's Eleventh Amendment analysis.

     **D.**    **Plaintiff's causes of action based on the alleged violations of his First Amendment rights fail to state a claim upon which relief may be granted.**

     A complaint is not to be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); <u>South Florida Water Management Dist. v. Montalvo</u>, 84 F.3d 402, 406 (11th Cir. 1996). In reviewing the sufficiency of a complaint in the context of a motion to dismiss, a district court must treat all of the well-pleaded allegations of the complaint as true. <u>Miree v. Dekalb County, Ga.</u>, 433 U.S. 25, 27 n.2, 97 S. Ct. 2490, 2492 n.2, 53 L. Ed. 2d 557 (1977). It must also draw all inferences from those

10

facts in the light most favorable to the plaintiff. <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993); <u>Montalvo</u>, 84 F.3d at 406. However, where it appears from the face of the complaint that the plaintiff's allegations -- even when accepted as true -- fail to support the cause of action set forth therein, the court must grant the motion and dismiss the complaint. <u>See</u> <u>Conley</u>, 355 U.S. at 45-46.

In Counts I and III, Plaintiff asserts that Defendant Stephan should be held liable for violating Plaintiff's free speech rights. In specific, Plaintiff alleges that his constitutional rights were infringed when Stephan initiated disciplinary action against him based on Plaintiff's out-of-class comments concerning the need to establish higher minimal requirements for academic achievement in Russian classes and/or his in-class references to sexual anatomy. Even accepting all of Plaintiff's allegations as true, the Court finds that he has failed to state a § 1983 free speech claim.

The law is well-established that a State may not demote or discharge a public employee in retaliation for speech protected under the First Amendment. <u>See</u> <u>Rankin v. McPherson</u>, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896 (1987); <u>Tindal v. Montgomery County Commission</u>, 32 F.3d 1535, 1539 (11th Cir. 1994). Of course, a public employee's right to freedom of speech is not absolute. A public employee's speech is entitled to First Amendment protection *only* where that speech involves a matter of public concern. <u>Connick v. Meyers</u>, 461 U.S. 138, 146, 103 S.Ct.

11

1684, 1690 (1983).  Hence, the threshold question for this Court
is whether Plaintiff's comments may be construed as touching upon
a matter of public concern.  <u>Williams v. Alabama State
University</u>, 102 F.3d 1179, 1183 (11th Cir. 1997).  The Court
finds that they cannot.

In his amended complaint, Plaintiff alleges that
"[p]reservation of academic freedom is a matter of public
concern[,] and the issue of whether speech which is purportedly
offensive to a particular class of individuals should be
tolerated in American public universities is a matter of public
concern."  The Court does not dispute this reasoning.  It is,
however, irrelevant to the present analysis.

Plaintiff does not allege that he was disciplined for
speaking out on the topic of preserving academic freedoms.
Neither does he allege that he was disciplined for speaking out
against the sexual harassment policy at UF and its application to
classroom teaching.  Rather, the amended complaint contains
allegations stating only that Plaintiff was disciplined for
advocating the need for more strenuous academic requirements in
introductory Russian classes at UF, *Amended Complaint* at ¶11, 13;
and for describing to his students purportedly humorous things
such as the subliminal correlation between Russian noun-endings
and sexual anatomy.  *Amended Complaint* at ¶35.

Certainly, any jocular comments made by Plaintiff about the
etymology of Russian nouns did not constitute speech on a matter
of public concern.  <u>See</u>, <u>e.g.</u>, <u>Martin v. Parrish</u>, 805 F.2d 583,

12

585 (5th Cir. 1986) (holding that use of profanity is not speech on a matter of public concern).

Moreover, criticism of what Plaintiff perceived to be his department chairman's lax academic requirements cannot be said to constitute speech on a matter of public concern. See Williams, 102 F.3d at 1182-1184 (declining opportunity to hold that a professor had engaged in speech touching upon a matter of public concern when she criticized her university's administration for requiring her to use a particular textbook in teaching a class); see, also, Ferrara v. Mills, 781 F.2d 1508 (11th Cir. 1986); Dorsett v. Board of Trustees, 940 F.2d 121 (5th Cir. 1991); Harris v. Merwin, 901 F.Supp. 509 (N.D.N.Y. 1995); Day v. Board of Regents, 911 F.Supp. 1228 (D.Neb. 1995), aff'd 83 F.3d 1040 (8th Cir. 1996).

Where -- as in this case -- a public employee is disciplined not for speaking as a citizen upon matters of public concern, but instead for speaking as an employee upon matters of internal administration, a federal court is not the forum in which to review the wisdom of a personnel decision taken by a State agency in reaction to the employee's speech. Connick, 461 U.S. at 147-48; Ferrara 781 F.2d at 1516 ("a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run"). Plaintiff's speech in this case did not address a matter of public concern; accordingly, this is not an inappropriate forum in which to adjudicate Plaintiff's complaint

13

insofar as it has attempted to assert a "free speech" grievance. The First Amendment claims raised in Plaintiff's complaint must therefore be DISMISSED.

> **F.   Plaintiff's causes of action based on an alleged denial of procedural due process are barred under Eleventh Circuit precedent.**

Finally, the Court notes that any procedural due process claims that Plaintiff has attempted to assert would be barred, even if they could survive the Eleventh Amendment arguments put forth in the defendants' motion to dismiss.  Under the holding in McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc), cert. denied, 115 S.Ct. 898 (1995), Plaintiff is required to pursue his deprivation of procedural due process argument within the state judicial system -- not by resort to federal court.  See Gerald Gee v. Frederick Humphries, et al., Case No. 95-40031-RH (N.D.Fla. December 2, 1996), *Order on Summary Judgment* at 12-13. Plaintiff did not pursue the state court remedies which were available to him.  Accordingly, the procedural due process portions of the amended complaint must be DISMISSED in their entirety.

14

It is hereby

**ORDERED AND ADJUDGED:**

(1)   Defendants' Motion to Dismiss Plaintiff's Amended Complaint (doc. 20) is GRANTED.   This case shall be DISMISSED WITH PREJUDICE.


(2)   The Clerk is directed to CLOSE the case.

**DONE AND ORDERED** this 23rd day of April           , 1997.


MAURICE M. PAUL, CHIEF DISTRICT JUDGE

15